UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **James B. Jett,** | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil No. 14-cv-00276 (APM) |
| **Federal Bureau of Investigation,** | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

**I.  INTRODUCTION**

In this Freedom of Information Act ("FOIA") case, Defendant Federal Bureau of Investigation ("FBI") seeks reconsideration of a ruling granting a motion for summary judgment in favor of Plaintiff James B. Jett and denying the agency's cross-motion for summary judgment. Specifically, the court held on September 30, 2015, that the FBI conducted an inadequate search for records responsive to Plaintiff's FOIA request, because the FBI refused to use as search terms the names of third parties that Plaintiff had provided. The court also ruled that the FBI's search was inadequate because it did not attempt to locate responsive recordings in its Electronic Surveillance Indices database, even though Plaintiff's FOIA request expressly sought certain recordings likely to be found in that database.

The court has considered the FBI's arguments and declines to change its prior decision. The Motion for Reconsideration is therefore denied.

## II. BACKGROUND

The background of this case is set forth in detail in the court's Memorandum Opinion, issued on September 30, 2015. *See Jett v. FBI*, No. 14-cv-276, 2015 WL 5921898, at *1-3 (D.D.C. Sept. 30, 2015) [hereinafter Mem. Op.]. Briefly, the background is as follows.

### A. Factual Background

In 2012, Plaintiff, who at the time was a local public official, ran for a seat in the U.S. House of Representatives. Among his opponents was an incumbent Congressman (the "Opponent"). During the race, multiple intermediaries (the "Intermediaries"), purportedly acting on behalf of the Opponent, approached Plaintiff and offered him certain inducements to drop out of the race. Plaintiff reported the offers to the FBI, which initiated an investigation of the Opponent and the Intermediaries. The investigation included Plaintiff's consensual recording of telephone conversations with the Intermediaries. *Id.* at *1. Shortly after Plaintiff made these recordings, the FBI terminated the investigation, in part because, against the FBI's wishes, Plaintiff told the investigation's subjects that the FBI had approached him and had asked whether he had received offers to drop out of the race. *Id.* at *2.

Six months later, in December 2012, Plaintiff submitted a FOIA request to the FBI by email seeking records about the FBI's investigation of the Opponent and the Intermediaries. *See* Defs.' Mot. for Summ. J., ECF No. 10, Decl. of David M. Hardy, Ex. A, ECF No. 10-2, at 25 [hereinafter Hardy Decl.]. As pertinent here, the FOIA request asked the FBI to search its Central Records System (the "CRS") for any information concerning the investigation; the request specifically named the Opponent and the Intermediaries as "suspects" of that investigation. *Id.* The FOIA request also sought "copies of telephonic tape recordings made from my personal telephone at the request of the FBI." *Id.*

The FBI identified and produced some records based on a search of the CRS using a three-way phonetic breakdown of Plaintiff's name. *See* Mem. Op. at *3. The FBI, however, categorically refused to search for the names of the Opponent or the Intermediaries in the CRS database, because Plaintiff had not submitted Privacy Act waivers from those individuals. *See id.* The FBI also did not search its Electronic Surveillance Indices ("ELSUR") database, a record-keeping system separate from the CRS, in which the FBI stores investigative records pertaining to the agency's use of electronic and telephone recordings. *Id.* at *10. The FBI did not search the ELSUR database even though Plaintiff specifically requested copies of his recorded telephone conversations with the Intermediaries. *Id.*

### B. Procedural History

Defendant moved for summary judgment, and Plaintiff cross-moved. The parties disagreed as to whether the FBI's search was adequate. *Id.* at *1. Plaintiff argued that the FBI's search was inadequate because the FBI: (1) did not search the CRS database using the Opponent's and Intermediaries' names, and (2) did not search the ELSUR database at all. *Id.* at *9-*10. The FBI maintained that its search met its obligations under FOIA.

The court ruled in Plaintiff's favor regarding his first contention. In making its decision, the court relied primarily on *Citizens for Responsibility & Ethics in Washington (CREW) v. DOJ*, 746 F.3d 1082, 1095-96 (D.C. Cir. 2014). This court concluded that here, as in *CREW*, the private-public interest balance under FOIA Exemption 7(C) did not weigh decidedly in favor of non-disclosure and therefore the FBI could not categorically refuse to search the CRS database using the Opponent's and the Intermediaries' names. Importantly, the court made clear that it was not ruling on the applicability of any FOIA exemptions should an expanded search of the CRS database produce additional responsive records. *Id.*

Regarding the FBI's decision not to search the ELSUR database, the court again ruled in Plaintiff's favor. The court's reasoning was straightforward. Plaintiff explicitly sought recorded communications. Such communications could be located only through a search of the ELSUR database. *Id.* at *10-*11. Because the FBI failed to search an obvious source for responsive records, the court ordered a search of the ELSUR database. *Id.*

On October 28, 2015, Defendant filed its motion seeking reconsideration of the court's decision requiring it (1) to search the CRS database for the Opponent's and the Intermediaries' names, and (2) to search the ELSUR database for responsive records. *See* Mot. for Recons., ECF No. 22.

### III. STANDARD OF REVIEW

Because the Memorandum Opinion did not constitute a final judgment, the court evaluates the FBI's Motion for Reconsideration under Federal Rule of Civil Procedure 54(b). *See Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005) (citations omitted). Rule 54(b) provides that "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all of the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." In this jurisdiction, relief under Rule 54(b) may be granted "as justice requires." *Cobell*, 355 F. Supp. 2d at 539 (citation and internal quotation marks omitted). That abstract phrase has been understood to mean that a court will grant a motion to reconsider under Rule 54(b) "only when the movant demonstrates: (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order." *Zeigler v. Potter*, 555 F. Supp. 2d 126, 129 (D.D.C. 2008).

Ultimately, relief under Rule 54(b) is "limited by the law of the case doctrine and subject to the caveat that where litigants have once battled for the court's decision, they should neither be

required, nor without good reason permitted, to battle for it again." *Singh v. Geo. Wash. Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (citation and internal quotation marks omitted).

IV.     **DISCUSSION**

    A.     **Search of the CRS Using the Opponent's and the Intermediaries' Names**

        *1.     This case is not materially different than CREW*

As the FBI does not identify any intervening change in law or discovery of new evidence, its motion rests on the contention that the court's decision requiring it to search the CRS using the Opponent's and Intermediaries' names was clear error. The FBI submits that its decision to forego such a search was "a reasonable response given the strong privacy interests that are involved in regard to these third parties and the records that the FBI maintains in connection with them," Mot. for Recons., at 3, and that "Plaintiff has not established a legitimate claim of public interest that would warrant such action in this case either under the standards of [*CREW*] or simply under a reasonable interpretation of the term," *id.*

These arguments are new. The FBI did not raise them in its summary judgment papers. And although the FBI is not barred from raising new arguments to demonstrate the courts' supposed clear error, *see Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015) ("Rule 54(b)'s approach to interlocutory presentation of new arguments as the case evolves can be more flexible[.]"), it plainly has refashioned its earlier argument. Originally, in response to Plaintiff's assertion that the search of the CRS was inadequate, the FBI's legal brief offered only a single retort—"Plaintiff cannot question the adequacy of the search regarding the third parties when he failed to comply with FBI's request for privacy waiver in order to process those records." Def.'s Combined Reply and Opp., ECF No. 14, at 3 [hereinafter Def.'s Combined Br.]. The FBI did not argue, as it does now, that its categorical refusal to search was permissible (1) because "[t]here is

5

no cognizable public interest to balance against the substantial privacy interests at issue" or (2) because "[t]he FBI appropriately withheld all responsive records as a categorical denial under Exemptions 6 and 7(C)."  Mot. for Recon. at 6, 7 (modifications omitted).  The FBI raised the balancing of the public and private interests only to justify its redaction of the names of third parties and law enforcement personnel from previously *disclosed records*.  *See* Def.'s Combined Br. at 8-9.  And, as for the assertion that categorical withholding was appropriate, that argument was referenced only in the FBI's declarant's affidavit, but never in its legal brief.[1]

In any event, these new arguments do not carry the day.  As the FBI acknowledges, a categorical refusal to search for documents under Exemption 7(C), and a disregard for "individual circumstances," is permissible only "when a case fits into a genus in which the balance [of private and public interests] *characteristically tips* in one direction."  *DOJ v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 776 (1989) (emphasis added) (cited in Mot. for Recons. at 8).  Court of Appeals precedent further illuminates this issue.  In *CREW*, the Court of Appeals rejected a categorical withholding of documents where a FOIA requester sought all documents relating to the public investigation of former House Majority Leader Tom DeLay.  *See* Mot. for Recon. at 9 (explaining *CREW*, 746 F.3d at 1095-96).  Although it recognized that DeLay's personal privacy interests were substantial, the Court of Appeals nevertheless held that a categorical withholding under Exemption 7(C) was improper because of the "weighty public interest in shining a light on the FBI's investigation of major political corruption and the DOJ's ultimate decision not to prosecute a prominent member of the Congress for any involvement he may have had."  *Id.* at

---

[1] The FBI's declarant stated that "the FBI neither confirms [nor] denies the existence of any records pertaining to [third parties]."  Hardy Decl. ¶ 34.  Hardy also seemed to assert that a categorical withholding of responsive third-party records was permissible under *CREW* because "plaintiff has not put forth any evidence of a significant interest to tip the balance in favor of disclosure."  *Id.* ¶ 35.  But the FBI never raised those arguments in its briefs.  *See, e.g.*, Def.'s Mot. for Summ. J. at 7-8, 12-14 (never mentioning a *Glomar* response or the lack of a public interest in explaining why the FBI did not use third-party names to search).

1092-93.  Accordingly, the Court rejected the DOJ's assertion that there was "*no* public interest in examining the FBI's investigation of, and the DOJ's decision not to charge, the former House Majority Leader."  *Id.* at 1094.

The FBI attempts, unsuccessfully, to distinguish the facts of this case from those in *CREW*. Mot. for Recons. at 9.  The FBI points out that Tom DeLay was a "public figure with significant public notoriety" and that his investigation "implicated a wide public corruption investigation," namely, the scandal revolving around lobbyist Jack Abramoff.  *Id.*  By contrast, the FBI argues, "the third parties involved in Plaintiff's case are relatively obscure individuals and a heightened level of public interest, thus, is not reached."  *Id.*

The court has already considered and rejected these very arguments.  *See* Mem. Op. at *10 ("True, this case may not match the notoriety of the Abramoff scandal and Jett's Opponent may not be as prominent as Tom Delay.").  Based on that fact alone, the court is within its discretion to deny the motion for reconsideration.  *See McLaughlin v. Holder*, 864 F. Supp. 2d 134, 141 (D.D.C. 2012) ("A court may properly exercise its discretion by denying a motion for reconsideration that 'raise[s] . . . arguments for reconsideration the court ha[s] . . . already rejected on the merits.'") (quoting *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011)).  And the court denies the motion, in part, for that very reason.

But the court also further clarifies here why it did not find the factual distinctions between this case and *CREW* to be material.  The Court of Appeals in *CREW* did not say, as the FBI suggests, that the involvement of a *high-ranking* government official is the critical element that tips the private-public balance against allowing an agency to categorically withhold information. *See CREW*, 746 F.3d at 1093-94 (observing that "we have repeatedly recognized a public interest in the manner in which the DOJ carries out substantive law enforcement policy" and that DeLay's

7

prominence "*further* raises the stakes" as to the public's interest) (emphasis added).  Indeed, the history books, newspapers, and—in today's world—blogs are replete with stories and commentary about investigations and prosecutions of public officials, including those who may be characterized as "obscure."[2]  The DOJ's routine issuance of press releases and holding of press conferences to announce indictments, pleas, and convictions in public corruption cases is evidence of the great public interest in such matters.  Here, the public unquestionably has a substantial interest in learning how federal law enforcement personnel handled the criminal investigation of a sitting Congressman—even if not a high-ranking Member—and whether such a person was subjected to the "same investigative scrutiny and prosecutorial zeal as local aldermen and little-known lobbyists," as well as anonymous, everyday citizens.  *CREW*, 746 F.3d at 1094.

The FBI also has not explained why law enforcement activities involving a lower-profile Congressman merits less transparency.  Public accountability surely is not restricted to high-ranking elected officials.  And local voters surely have an equal, if not greater, interest in the government's investigation of their own representative in Congress as they do of, say, the Speaker of the House.  Therefore, Plaintiff's Opponent's lesser national profile does not sufficiently distinguish this case from *CREW* to warrant a different outcome.  And no different conclusion is warranted with regard to the Intermediaries.  *See* Mot. for Recon. at 10.  The public has a legitimate interest in understanding how law enforcement handled the investigation of those accused of attempting to corrupt the political process on behalf of the Opponent.  Such matters are properly the subject of public concern.  *See CREW*, 746 F.3d at 1093.

---

[2] Wikipedia contains an article entitled "List of federal political scandals in the United States." *See* https://en.wikipedia.org/wiki/List_of_federal_political_scandals_in_the_United_States (last visited Jan. 6, 2016). A quick perusal of that list shows that lesser known public officials grabbed headlines when they became the subject of a federal prosecution or investigation.

The FBI also tries to distinguish this case from *CREW* on the ground that, in *CREW*, DeLay, the subject of the FOIA request, "publically revealed that there was an investigation," whereas here, Plaintiff, not Opponent (who is the subject of the FOIA request), disclosed the investigation. Mot. for Recons. at 9. But the FBI misreads the facts of *CREW*. *CREW* noted that, in August 2010, DeLay "made public statements confirming the fact that he had been, but was no longer, under investigation." 746 F.3d at 1092. The Abramoff investigation, however, had been ongoing for years before DeLay's announcement and had ensnared some of his senior aides. *See id.* at 1087. Thus, even though the FBI had not officially acknowledged that DeLay was a subject of an inquiry, his close proximity to the government's investigation was hardly a secret. In any event, the fact that the public in this case learned of the FBI's investigation of the Opponent because of Plaintiff's disclosures does not materially distinguish this case from *CREW*. Once an investigation of a sitting Congressman accused of misusing his office emerges into the public realm, the citizens, particularly his constituents, acquire a substantial interest in learning how federal law enforcement handled the investigation, especially if no prosecution results. *See Reporters Comm.*, 489 U.S. at 766 n.18 ("[M]atters of substantive law enforcement policy . . . are properly the subject of public concern."); *CREW*, 746 F.3d at 1093 ("[D]isclosure of the requested records would likely reveal a great deal about law enforcement policy.").[3] The Member's acknowledgement of an investigation, as in *CREW*, might diminish that person's privacy interests, but it does not lessen the public's interest in disclosure.

  2.   *Blackwell v. FBI does not compel a different outcome*

The FBI also urges reconsideration because it contends that this case is closer to *Blackwell v. FBI*, 646 F.3d 37 (D.C. Cir. 2012), than *CREW*. Mot. for Recons. at 10. The court disagrees.

---

[3] To the extent that the FBI argues that the only valid public interest in the disclosure of information about law enforcement activities is to show government misconduct, *see* Mot. for Recons. at 7, *CREW* plainly holds otherwise.

In *Blackwell*, the FOIA requester sought documents concerning his criminal conviction for insider trading, including information concerning various witnesses. *Id.* at 39. The FBI produced some records but withheld and redacted others, invoking Exemption 7(C). The Court of Appeals held that the FBI's invocation of the exemption was proper because the FOIA requester had not shown government misconduct sufficient to overcome Exemption 7(C)'s protection for personal privacy interests. *Id.* at 41. The court also rejected the FOIA requester's contention, similar to that which Plaintiff made here, that the FBI's search was inadequate because it did not "search its databases using the names of the individuals he had specifically mentioned in his request." *Id.* at 42. The court held that, "[b]ecause a search for records 'pertaining to' specific individuals . . . would have added only information that we have concluded is protected by Exemption 7(C), it follows that the FBI was correct in declining to search for such documents." *Id.*

This court previously distinguished *Blackwell* in its Memorandum Opinion, *see* Mem. Op. at *10, but explains the distinction in greater detail here. First, unlike in *Blackwell*, Plaintiff's FOIA request did not seek information "pertaining to" third parties. Rather, it sought records relating to the FBI's investigation of the Opponent and the Intermediaries and asked the FBI to search for such records using their names. *See* Hardy Decl., Ex. A. Thus, unlike the request in *Blackwell*, Plaintiff's request sought information about the named individuals *only to the extent* that the information related to the investigation—it did not seek all information "pertaining to" those individuals.

Second, unlike in *Blackwell*, this court cannot conclude that a search using Plaintiff's specified third-party names would produce only information protected by Exemption 7(C). The records that the FBI disclosed to Plaintiff, which included redacted FD-302s, transcripts of recordings, and other investigative memoranda, are illustrative. They show how the FBI's

10

investigation began, the steps the agency took to develop evidence, and why it abruptly concluded the investigation without prosecution. *See generally* Hardy Decl., Ex. K. Such information is not subject to withholding under Exemption 7(C) merely because it references third parties or relates to their activities. *See CREW*, 746 F.3d at 1093 ("Disclosure of the FD-302s and investigative materials could shed light on how the FBI and the DOJ handle the investigation and prosecution of crimes that undermine the very foundation of our government."). Here, it is not hard to imagine that a search using the Opponent's and the Intermediaries' names could produce additional responsive, non-duplicative records about the investigation, similar to the records the FBI already disclosed. Such records, unlike in *Blackwell*, would not be protected from disclosure in their entirety under Exemption 7(C). Thus, *Blackwell* does not compel a different outcome.

### 3. Other District Court cases do not warrant a different result

The FBI also cites a trio of cases for the proposition that "several Courts in this District have upheld similar agency decisions not to search third party records absent a waiver or proof of death." Mot. for Recons. at 9-10 (citing *Boyd v. EOUSA*, 87 F. Supp. 3d 58 (D.D.C. 2015); *Black v. DOJ*, 69 F. Supp. 3d 26 (D.D.C. 2014), *aff'd* No. 14-5256, 2015 WL 6128830 (D.C. Cir. Oct. 6, 2015); *Marcusse v. OIP*, 959 F. Supp. 2d 119 (D.D.C. 2013)). None of those cases, however, involved a public corruption investigation. And, in each of those cases, unlike here, the asserted public interest was to expose alleged wrongdoing by government officials, which, in each case, the court found was either too speculative or unsubstantiated. *Boyd*, 87 F. Supp. 3d at 73-74; *Black*, 69 F. Supp. 3d at 38; *Marcusse*, 959 F. Supp. 2d at 129. Here, on the other hand, the asserted public interest, as in *CREW*, was to enable citizens to learn "'what their government is up to.'" 746 F.3d at 1093 (quoting *Reporters Comm.*, 489 U.S. at 773). And, the public interest in

this case, as in *CREW*, was sufficiently significant that the FBI could not categorically refuse to search for records by invoking Exemption 7(C).

To be clear, there is no tension between the court's decisions that the FBI's categorical refusal to search the CRS database for the individuals' names was improper under Exemption 7(C), Mem. Op. at *9-10, and yet the FBI's withholding of third-party names was proper under that same exemption, *id.* at *4-6. As discussed, *CREW* held that, when the private-public balancing does not characteristically tip in favor of non-disclosure, a law enforcement agency cannot invoke Exemption 7(C) to categorically refuse to search for responsive records. It must conduct a search in such circumstances. *CREW*, 746 F.3d at 1094-96.

At the same time, however, *CREW* recognized that, an agency's collection of potentially responsive information does not lead to automatic disclosure; such information still may be withheld under Exemption 7(C). *See id.* at 1096 ("We do not hold that the requested information is not exempt under Exemption 7(C)). . . . it is likely that some of the requested information ultimately will be exempt from disclosure. . . . For instance, the names and identifying information of third parties contained in investigative files are presumptively exempt." (citations omitted)). The court struck that very balance in this case. It concluded that the FBI's categorical refusal to search for the names was not permitted, but at the same time, held that the FBI's withholding of the names of third parties was proper under Exemption 7(C). Thus, there is no conflict between those two rulings.

It bears repeating what the court said in its Memorandum Opinion: any records generated from a search of the CRS using the Opponent's or the Intermediaries' names need not necessarily be disclosed. Mem. Op. at *10 ("None of this is to say that the documents that such a search generates, if any, must be produced in their entirety."). The FBI still may withhold records or

excerpts of records under Exemption 7(C) because "'the names and identifying information of third parties contained in investigative files are presumptively exempt.'" *Id.* (quoting *CREW*, 746 F.3d at 1096). Law enforcement "techniques, procedures," or "guidelines" may be withheld under Exemption 7(E). Indeed, in its Memorandum Opinion the court affirmed redactions made pursuant to both Exemptions 7(C) and 7(E). *Id.* at *4-*7. Other exemptions might be applicable, as well. The court also ruled that duplicative records need not be produced. *Id.* at *8. The court held only that the FBI's categorical refusal to search for the names provided by Plaintiff was improper. The applicability of FOIA exemptions to any additional responsive information is a question left for another day.

### B. Search of the ELSUR Database

The FBI also purports to seek reconsideration of the court's ruling that its search was inadequate because it did not look for telephonic recordings in the ELSUR database. Mot. for Recons. at 1. But other than mentioning that ruling in the introductory paragraph of its motion, the FBI does not offer any argument as to why the court should revisit its decision. The court therefore denies the FBI's motion as to the ELSUR search.

### IV. CONCLUSION AND ORDER

For the foregoing reasons, the FBI's Motion for Reconsideration is denied. On or before February 7, 2016, the parties shall file a joint status report (1) detailing the FBI's compliance with the Memorandum Opinion and Order and (2) stating their respective views on whether further litigation is expected in this matter.

Date: January 8, 2016

Amit P. Mehta
United States District Judge