## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                               )
**JAMES B. JETT,**                             )
                                               )
    **Plaintiff,**             )
                                               )
       **v.**                            )    **Case No. 1:14-cv-00276 (APM)**
                                               )
**FEDERAL BUREAU OF INVESTIGATION,**           )
                                               )
    **Defendant.**             )
_____        )

## MEMORANDUM OPINION AND ORDER

This dispute concerns a Freedom of Information Act ("FOIA") request directed to Defendant the Federal Bureau of Investigations ("FBI") for information concerning an investigation of an alleged pre-election bribe offer made to a former congressional candidate, Plaintiff James Jett. Before the court are the parties' second round of cross-motions for summary judgment. The parties continue to dispute whether the FBI (1) performed an adequate search in response to Jett's request and (2) properly asserted exemptions to withhold certain documents responsive to that request. Jett claims the search is inadequate in light of inconsistencies in the FBI's representations regarding the scope of its searches, which documents its searches uncovered, and which documents it has produced. He seeks limited discovery to untangle perceived inconsistencies in the FBI's affidavits. Additionally, Jett challenges the FBI's reliance on certain FOIA exemptions, as well as whether the FBI properly segregated and released all nonexempt information from the records responsive to his request.

After thorough review of the parties' briefs and the underlying record, the court concludes that limited discovery is necessary to determine whether the FBI performed an adequate search within the meaning of FOIA. Specifically, Jett will be allowed to engage in discovery to determine

whether an additional, separate search of the FBI's Electronic Surveillance Indices database is necessary to reach any records responsive to Jett's FOIA request and satisfy the FBI's search obligations.  With respect to the materials the FBI has produced thus far, however, the court concludes the FBI properly withheld certain portions of the requested investigative files. Accordingly, the court grants in part and denies in part the FBI's Motion for Summary Judgment, denies Jett's Cross-Motion for Summary Judgment, and grants Jett's Rule 56(d) Motion for Limited Discovery.

## I.      BACKGROUND

Because the factual and procedural history of this case already is set forth in the court's first summary judgment decision, *see Jett v. Fed. Bureau of Investigation*, 139 F. Supp. 3d 352, 357–58 (D.D.C. 2015), the court here recites only what is necessary to resolve the narrow issues that remain.

In 2012, while running for a seat to represent Florida in the United States House of Representatives, James Jett reported to the FBI that two intermediaries purportedly working on behalf of one of Jett's opponents ("the Intermediaries") had offered him bribes to withdraw his candidacy.  *Id.*  The FBI began an investigation, at the start of which Jett secretly recorded telephone conversations with the Intermediaries.  *Id.*  The investigation came to an abrupt end, however, when Jett inexplicably revealed the FBI's investigation to its targets.  *Id.*

Shortly after losing the election, Jett sent the FBI a FOIA request for information pertaining to the short-lived bribe investigation.  *See id.* at 358.  He requested, among other things, "FBI investigative reports, copies of telephonic tape recordings made from [his] personal telephone at the request of the FBI, interview reports of any individuals involved, follow-up investigative reports by any FBI agents, and/or written transcriptions of any recorded conversations between

[himself] and the suspects involved in the case." *Id.* Additionally, Jett specifically requested that the FBI search its Central Records System ("CRS"). *Id.* The FBI produced some records in response to Jett's request but withheld others, leading Jett to seek this court's review of the adequacy of the FBI's search and the legitimacy of its justifications for redactions and withholdings of certain responsive materials. *See* Compl., ECF No. 1.

In the first round of summary judgment briefing, the FBI represented that it had fully complied with FOIA by searching the CRS using "a three-way phonetic breakdown" of Jett's name only; the agency did not search for records using the names of the Intermediaries or the opponent who allegedly made the bribe offer. *See* Def.'s Mot. for Summ. J., ECF No. 10 [hereinafter Def.'s First Mot.], Decl. of David M. Hardy, ECF No. 10-2 [hereinafter First Hardy Decl.], ¶¶ 22, 34–36. That search yielded 66 pages of responsive documents, of which the FBI produced one page in full and 59 pages in part. *Id.* ¶ 25. Three of the remaining pages were withheld in full, pursuant to the FBI's invocation of FOIA Exemptions 6, 7(C), and 7(E), and three pages were withheld as duplicative of other responsive documents. *Id.* ¶¶ 25, 28. The FBI moved for summary judgment, explaining that it appropriately limited its search to the CRS because Jett had specifically requested a search of the CRS. *See* Def.'s Combined Reply in Opp'n to Pl.'s Mot. for Summ. J., ECF No. 14 [Def.'s First Reply], at 4. In a cross-motion for summary judgment, Jett challenged both the adequacy of this search and the applicability of the exemptions the FBI raised to withhold certain responsive materials. *See* Pl.'s Mot. for Summ. J. & Mem. in Supp., ECF No. 12, at 2.[1]

On September 30, 2015, after the benefit of in camera review of the responsive materials, the court granted in part and denied in part both parties' motions. *See Jett*, 139 F. Supp. 3d at 368.

---

[1] All pin citations to this document reference the original pagination of Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment. That document appears in the same docket entry as Plaintiff's Motion for Summary Judgment. *See* ECF No. 12.

The court ruled, among other things, that the FBI's search was deficient insofar as the agency (1) had categorically declined to search for the names of third parties that Jett had provided as part of his FOIA request, and (2) did not search its Electronic Surveillance Indices database ("ELSUR indices"), in which the FBI maintains electronic and telephonic recordings, despite the FBI knowing responsive records were likely to be found there, given Jett's participation in recorded phone calls during the investigation. *See id.* The court's Order required the FBI to remedy the deficiencies in its search and submit a subsequent status report reflecting its compliance with the court's opinion. *See id.* On October 28, 2015, the FBI filed a Motion for Reconsideration, which the court denied on January 8, 2016. *See Jett v. Fed. Bureau of Investigation*, No. 14-276, 2016 WL 107912 (D.D.C. Jan. 8, 2016).

On December 30, 2015, before the court had ruled on the FBI's Motion for Reconsideration, the FBI sent Jett additional, partially redacted materials responsive to Jett's FOIA request. *See* Def.'s Renewed Mot. for Summ. J., ECF No. 31 [hereinafter Def.'s Second Mot.], at 3. The FBI did not, however, explain to Jett the origin of these records at the time it sent them. Then, after the court denied the Motion for Reconsideration, the FBI performed additional searches of the CRS using the names of the third-parties supplied by Jett to comply with the court's September 2015 Order, but found no new records. *See* Notice of Filing, ECF No. 29, Third Decl. of David M. Hardy, ECF No. 29-1 [hereinafter Third Hardy Decl.] ¶¶ 8, 13.

Now before the court are the parties' renewed cross-motions for summary judgment regarding whether the FBI (1) has remedied the deficiencies in its search for documents responsive to Jett's FOIA request and (2) has properly withheld portions of the records it disclosed on December 30, 2015.

## II.     LEGAL STANDARD

The court reviews de novo whether an agency has complied with its obligations under

FOIA.  5 U.S.C. § 552(a)(4)(B).

On a motion for summary judgment, a court must enter judgment in favor of the moving

party if that party "shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" only if a

reasonable fact-finder could find for the nonmoving party, and a fact is "material" only if it is

capable of affecting the outcome of the litigation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).

An agency performs an "adequate search" and may be awarded summary judgment when

it performs a search "reasonably calculated to uncover all relevant documents."  *Oglesby v. U.S.*

*Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  The agency bears the burden of proving that

it performed an adequate search, and it may rely on sworn affidavits or declarations to make that

showing.  *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).  The court may

grant summary judgment to the agency based on those materials if they are reasonably specific

and contradicted by neither other record evidence nor evidence of agency bad faith.  *See Military*

*Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *Beltranena v. Clinton*, 770 F. Supp.

2d 175, 181–82 (D.D.C. 2011).  FOIA plaintiffs can rebut an agency's declarations and affidavits

by demonstrating, with "specific facts," that there remains a genuine issue as to whether the agency

performed an adequate search for documents responsive to the plaintiff's request.  *See Span v. U.S.*

*Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (internal quotation marks omitted).

Discovery is only appropriate in a FOIA case "when a plaintiff raises a sufficient question

as to the agency's good faith in processing documents in response to a FOIA request."  *Competitive*

*Enter. Inst. v. Office of Science & Tech. Policy*, 185 F. Supp. 3d 26, 27 (D.D.C. 2016).   Any affidavits or declarations the agency submits are presumed to be submitted in good faith, and it takes more than speculation for a plaintiff to rebut that presumption.   *SafeCard Servs.*, 926 F.2d at 1200.   Instead, the plaintiff must advance evidence of government wrongdoing or affirmative bad faith—such as serious inconsistencies in the agency's representations of the scope and completeness of its searches—before the court will allow any discovery.   *See Competitive Enter. Inst.*, 185 F. Supp. 3d at 27.

The agency also bears the burden of proving that it withheld certain materials responsive to a plaintiff's FOIA request pursuant to a statutory exemption from disclosure.   *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1088 (D.D.C. 2014). Once more, to make this showing, the agency may rely on affidavits and declarations.   "If the agency's affidavits 'provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without in camera review of the documents.'"   *Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 626 (D.C. Cir. 2011) (quoting *Larson v. U.S. Dep't of State*, 565 F.3d 857, 870 (D.C. Cir. 2009)).

Lastly, even when an exemption applies to shield one portion of a document responsive to the FOIA request, the agency is required to disclose "[a]ny reasonably segregable portion" of that document.   *See* 5 U.S.C. § 552(b).   "It is neither consistent with the FOIA nor a wise use of increasingly burdened judicial resources to rely on in camera review of documents as the principal tool for review of segregability disputes."   *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 262 (D.C. Cir. 1977) (footnote omitted).   Instead, agencies enjoy a presumption of

compliance with this obligation, absent contrary evidence submitted by the plaintiff.  *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

## III.   DISCUSSION

The FBI seeks summary judgment on the ground that it has fully complied with the court's September 2015 Order.  The Third and Fourth Declarations of FBI Section Chief David M. Hardy[2]—which the FBI offers as proof of its compliance—state that the FBI has searched for the third-party names Jett provided, as well as run a search of its systems that would flag any responsive records in the ELSUR indices.  *See* Third Hardy Decl. ¶ 7; *see also* Def.'s Second Mot. at 2–3.  Despite running these additional searches, the FBI represents that it only found the documents initially produced to Jett and those subsequently "provided to [Jett] by letter dated December 30, 2015."  Def.'s Second Mot. at 3; Third Hardy Decl. ¶¶ 13, 15–16.

Jett challenges the adequacy of the FBI's search and its justifications for withholding portions of those materials released on December 30, 2015.  The court addresses each of Jett's contentions in turn.

### A.   Whether the FBI's Search was Adequate

Jett's primary contention is that the FBI cannot claim it performed an adequate search in compliance with its statutory obligations.  Jett challenges both the timeline in which the FBI made its searches and whether the searches the FBI ran reached all records responsive to Jett's FOIA request.

First, Jett takes issue with the FBI's representation that its searches after the court's September 2015 Order denying summary judgment produced no new, responsive materials.  Jett

---

[2] Mr. Hardy is the Section Chief of the Record/Information Dissemination Section of the FBI's Records Management Division.  *See* Def.'s Combined Opp'n to Pl.'s Renewed Mot. for Summ. J. & Pl.'s Rule 56(d) Mot., ECF No. 38, Fourth Decl. of David M. Hardy, ECF No. 38-1, ¶ 1.

specifically points to the agency's production of new, responsive materials on December 30, 2015, which came *after* the court denied the FBI's first Motion for Summary Judgment. *See* Pl.'s Mem. in Supp. of Pl.'s Renewed Mot. for Summ. J., ECF No. 34 [hereinafter Pl.'s Second Mem.], at 3–4. Put another way, Jett claims that the FBI's assertion that it found no new documents after searching the CRS and the ELSUR indices for Jett's name and the third-party names Jett provided cannot be squared with the agency's production of new documents on December 30, 2015.

Second, Jett challenges the FBI's representation that only a single search inquiry was needed to identify all responsive records located within the CRS *and* the ELSUR indices. To support this argument, Jett cites declarations made by Hardy in other FOIA cases brought in this District Court, in which Hardy states that the CRS and the ELSUR indices are separate databases and that, in each case, the FBI ran separate inquires in each database to locate all responsive records. *See id.* at 2, 7. Accordingly, Jett avers, the FBI has previously represented it must conduct separate searches—one in each database—to reach records in both the CRS and ELSUR indices, which contradicts the FBI's recent representations here.

Jett requests limited discovery to address these perceived factual disputes in the FBI's representations, or, in the alternative, that the court summarily deny the FBI's motion and schedule an evidentiary trial. *See id.* at 4.

The court concludes that the Third and Fourth Hardy Declarations resolve the apparent conflict in the FBI's declarations regarding when the search for materials produced to Jett by letter on December 30, 2015, actually occurred and whether that search was a "new" search pursuant to the court's September 2015 Order. The Third Hardy Declaration explains that, after the court denied reconsideration, the FBI complied with the court's September 2015 Order by conducting searches using Jett's name and the names of the third-party individuals Jett provided, thereby

allowing the FBI to find and review any new responsive records.  Third Hardy Decl. ¶¶ 8–12.

Those searches produced no new responsive material.  *See id.* ¶¶ 13, 15.  Separately, the Fourth

Hardy Declaration explains that the materials sent to Jett on December 30, 2015, were *not* the

product of the new searches conducted to comply with the September 2015 Order.  Instead, those

records stemmed from a search conducted *before* the court's September 2015 Order, and the FBI

had intended to review and give these materials to Jett months earlier but mistakenly had not.  *See*

Def.'s Combined Opp'n to Pl.'s Renewed Mot. for Summ. J. & Pl.'s Rule 56(d) Mot., ECF No.

38 [hereinafter Def.'s Second Opp'n], Fourth Decl. of David M. Hardy, ECF No. 38-1 [hereinafter

Fourth Hardy Decl.], ¶ 6.[3]   While awaiting the court's ruling on the FBI's Motion for

Reconsideration, Hardy states, "the FBI conducted a review to ensure all responsive records had

been processed for release."  *Id.* ¶ 7.  This review was not a new search, but rather, a "re-

examin[ation of] the content of the documents previously released to [Jett]" from which the FBI

determined "ELSUR records should have existed within the file."  *Id.*  Consequently, the FBI's

Record/Information Dissemination Services ("RIDS") in Winchester, Virginia, contacted the

Jacksonville Field Office, from which responsive materials had been sent, and learned that certain

responsive materials had mistakenly not been sent to RIDS for review.  *Id.*  Upon discovering the

error, RIDS had the missing files sent from Jacksonville to Virginia, reviewed them, and released

a redacted version of those materials to Jett by letter dated December 30, 2015.  *Id.*

Thus, the Third and Fourth Hardy Declarations resolve any perceived inconsistency

between the FBI's statements that it ran searches using the third-party names Jett provided,

pursuant to the court's September 2015 Order, yet recovered no new documents after conducting

---

[3] The court treats docket entries 37 and 38 as a single response from the FBI, as both entries were made the same day and contain the same document, labeled "Defendant FBI's Combined Opposition to Plaintiff's Renewed Motion for Summary Judgment, Plaintiff's Rule 56(d) Motion for Limited Discovery, and Reply in Support of Defendant's Renewed Motion for Summary Judgment," despite docket text differentiating the motions.  *See* ECF Nos. 37 & 38.

those searches.  *See* Third Hardy Decl. ¶¶ 8–13; Fourth Hardy Decl. ¶¶ 6–8.  The materials produced to Jett by letter on December 30, 2015, were not the product of a new search pursuant to the court's Order, but rather, late-delivered documents responsive to the original searches the FBI ran before the court entered any summary judgment order in this case.  The court is satisfied with the FBI's explanation.

The court is not satisfied, however, with the FBI's explanation regarding the protocol used to search the ELSUR indices in this case.  The FBI seeks to have this court enter summary judgment in its favor as to whether it performed an "adequate search" on the ground that its search of materials through the Automated Case Support system ("ACS") flagged responsive records in *both* the CRS and ELSUR indices.  According to Hardy,

> [t]he ELSUR indices are searched via Automated Case Support ("ACS").  . . . For clarity, while ELSUR has a distinct legal identity from the CRS as a different Privacy Act System of Records, in terms of function, information from both ELSUR and the CRS are indexed and retrieved via index searches of the FBI's two case management systems:  ACS and Sentinel.

Third Hardy Decl. ¶ 7.  Thus, the FBI submits, its most recent searches of the CRS for the third-party names Jett provided constitute an "adequate search" within the meaning of FOIA because that single search—conducted through the ACS and Sentinel—was reasonably expected to locate responsive material in both the CRS and ELSUR indices.  *Id.* ¶ 14.

The notion that a search of the CRS via ACS and Sentinel will also locate any responsive records in the ELSUR indices is inconsistent with the position the FBI has taken in both this litigation and other FOIA lawsuits before this District Court.  In the initial round of summary judgment briefing in this case, Jett specifically asserted that the FBI's search of the CRS was inadequate because it would not reach all responsive records.  The FBI rebuffed that argument by claiming it had performed an "adequate search" despite declining to search the ELSUR indices:

> [Jett] also disputes that the CRS contains all records related to investigations and attaches to his Opposition filings other declarations filed by Mr. David Hardy which mention another FBI record system called Electronic Surveillance Indices (ELSUR) while suggesting that FBI should have searched the ELSUR. However, FBI was not required to search every record system, only the system reasonably calculated to locate all responsive records. . . . Furthermore, although an agency is not required to search a specific record system requested by FOIA requestor, in this case it was reasonable for FBI to search for the CRS system as requested. Here, it is undisputed that [Jett] . . . requested the FBI to search the CRS record system, thus FBI's search methodology is not only reasonable but also adequate based on the circumstances.

Def.'s First Reply at 4 (citation omitted). Thus, at the outset of this litigation, the FBI represented to the court that its search for records in the CRS *did not* encompass a search of the ELSUR indices because Jett did not specifically request such a search. Indeed, it was this representation that led the court to deny summary judgment to the FBI earlier in this case and order the FBI to search the ELSUR indices for both Jett's name and the third-party names Jett had provided. *Jett*, 139 F. Supp. 3d at 367–68. The court understood, based on past statements by Hardy, that the CRS and ELSUR indices were distinct databases that required separate searches. *Id.* at 367 ("As the FBI's affiant here, David Hardy, acknowledged in a declaration filed in another case, any responsive records within the ELSUR database would not be captured by a search of the CRS database.") (citing *Shapiro v. U.S. Dep't of Justice*, 37 F. Supp. 3d 7, 21 (D.D.C. 2014) (explaining that the FBI performed an adequate FOIA search by searching *both* the CRS and ELSUR indices, the latter of which is "a separate system of records from CRS . . . and [files therein] cannot be retrieved through either the General Index [used to access the CRS] or CRS")); *see also* Def.'s Mot. for Summ. J., Hardy Decl., ¶¶ 20, 22–23, 25, *Nolen v. U.S. Dep't of Justice*, 146 F. Supp. 3d 89 (D.D.C. 2015) (No. 14-1590) (explaining that the "ELSUR indices are published as a separate records system in the Federal Register because not all names contained in the ELSUR index can be retrieved through

the General Index and CRS" and stating, correlatively, that the FBI had responded to the plaintiff's

FOIA request with one search of the CRS and a separate search of the ELSUR indices, even though

searches of the ELSUR indices are not normally performed) (Mehta, J.). If the court had thought

that a single search using ACS and Sentinel would capture records in both the CRS and ELSUR

indices, then the court would have had no reason to order a separate search of the ELSUR indices.

The FBI now takes the position that any search performed using ACS and Sentinel will

retrieve responsive records from *both* the CRS and ELSUR indices. Consequently, Hardy states,

Jett's demand and the court's order for a separate search of the ELSUR indices reflect an outmoded

understanding of the FBI's systems, despite stemming from Hardy's own past representations:

> [Jett] cites my former declarations, dated 2013 and 2010, to support
> his assertion that there is a separate search required for ELSUR
> records. However, those declarations were based on obsolete
> information and practice which RIDS has updated circa February,
> 2015. Notwithstanding the information in the outdated declarations,
> the ELSUR indices are searched via Automated Case Support
> ("ACS"). Similar to the consolidation of all indexed record data
> from prior automated [CRS] systems superseded by ACA, the prior
> automated ELSUR indices also interfaced with ACS upon its
> implementation in 1995. As a result, the names of monitored
> subjects by FBIHQ or FBI Field Offices since January 1, 1960, are
> indexed within, and searchable by, the same [UNI] application
> employed to locate CRS records.

Third Hardy Decl. ¶ 7 (citation omitted). These few sentences are the only effort the FBI has made

to explain its dramatic change in position regarding the scope of its searches. Yet, those sentences

give rise to more questions than answers. If, since 1995, the ELSUR indices could be searched

using the same application used to search the CRS, then why in 2013 and 2010 did Hardy submit

declarations that suggest a single search is not adequate to identify responsive records in both

databases? What change in "practice" occurred "circa February 2015" that caused Hardy's earlier

declarations to become "obsolete?" Why did Hardy's First Declaration in this case leave the

impression that the FBI had not searched the ELSUR indices, when, according to Hardy's Third Declaration, it in fact had done so? And, why did the FBI make no effort to correct the court's apparent misunderstanding?[4]

These unanswered questions and the inconsistencies in the FBI's statements, not only within this case but also across different cases over the course of years, give rise to the kind of serious misgivings that may evidence agency bad faith and warrant discovery to resolve. *Cf. Competitive Enter. Inst.*, 185 F. Supp. 3d at 27. Jett, the court, and the public have a profound interest in achieving clarity regarding the searchability of the ELSUR indices and resolving the conflicting representations that the FBI has made about the characteristics of that database. Consequently, the court concludes the FBI has not satisfied its burden to prove it performed an adequate search within the meaning of FOIA as to responsive records that might be found within the ELSUR indices. Summary judgment in favor of Jett is not appropriate at this time, however, as there remains a genuine issue of material fact concerning whether a search for records in the CRS also constitutes a search for records in the ELSUR indices, such that the FBI has performed a search reasonably calculated to reach all records responsive to Jett's FOIA request. *See SafeCard Servs.*, 926 F.2d at 1200; *Competitive Enter. Inst.*, 185 F. Supp. 3d at 27. Accordingly, the court grants Jett limited discovery on that question.

---

[4] The FBI had ample opportunity earlier in this case to correct any misperception about its systems, but it did not do so. For instance, when the FBI filed a Motion for Reconsideration of the court's September 2015 Order, it made no effort to correct the court's apparent misunderstanding that the CRS and ELSUR indices could be, and in this case purportedly were, searched simultaneously. *Cf.* Fed. R. Civ. P. 54(b); *Singh v. George Wash. Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (explaining that seeking a motion for reconsideration of a court order is appropriate where "the court has patently misunderstood a party, . . . has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or fact [has occurred] since the submission of the issue to the court" (alteration in original) (internal quotation marks omitted)). Instead, the FBI acknowledged that it had been ordered to search the ELSUR indices and used its motion only to defend its decision not to search for the third-party names Jett had provided. *See* Def.'s Mot. for Reconsideration, ECF No. 22, at 1, 3.

**B.    Whether the FBI Properly Withheld Portions of the Documents Produced on December 30, 2015**

Jett also challenges the FBI's legal basis for withholding in full or in part portions of the materials disclosed to him on December 30, 2015, and asks the court to review those materials in camera to determine whether further disclosures are warranted. *See* Pl.'s Second Mem. at 2.

Jett received 21 partially redacted pages and one partially redacted media disc on December 30, 2015. *See* Fourth Hardy Decl. ¶ 9.[5]  Five pages of responsive materials were withheld in full. *Id.* ¶ 14.  In its moving papers, the FBI did not offer any justification for these withholdings. *See* Def.'s Second Mot. at 6–8 (arguing only that the FBI performed an adequate search).  After Jett noted the FBI's failure to assert any exemptions, *see* Pl.'s Second Mem. at 9–10, the FBI asserted for the first time in its Reply brief that its redactions are proper under Exemptions 6, 7(C), and 7(E).[6]  *See* Def.'s Second Opp'n at 7–15.  In response, Jett complains that the FBI provides only "generalized explanation[s]" for its withholdings—he does not challenge any exemption more specifically—and asks the court to conduct an in camera review of the undisclosed information. *See* Pl.'s Combined Reply in Supp. of Pl.'s Renewed Mot. for Summ. J. & Pl.'s Rule 56(d) Mot., ECF No. 39, at 6.[7]

---

[5] One page was withheld in its entirety because it was duplicative. *See* Fourth Hardy Decl. ¶¶ 9 n.3, 16 n.8.  The court previously held that FOIA does not require an agency to produce duplicative materials. *See Jett*, 139 F. Supp. 3d at 364–65.  The court repeats that conclusion with respect to the one page of the December 30, 2015, materials that the FBI withheld as duplicative.

[6] Although arguably raised too late, the court nevertheless will consider the FBI's justifications for its withholdings here and not treat them as forfeited. *Cf. August v. Fed. Bureau of Investigations*, 328 F.3d 697, 702 (D.C. Cir. 2003) (permitting the FBI to raise FOIA exemptions for the first time on appeal because those omissions "resulted from human error" and stating that, in such a case, it would be "inappropriate . . . [to apply] the rigid 'press it at the threshold, or lose it for all times' approach").

[7] The court treats docket entries 39 and 40 as a single response from Jett, as both entries were made the same day and contain the same document, labeled "Plaintiff's Combined Reply in Support of Plaintiff's Renewed Motion for Summary Judgment and Plaintiff's Rule 56(d) Motion," despite docket text differentiating the motions. *See* ECF Nos. 39 & 40.

14

1.      *Exemptions 6 & 7(C)*

FOIA Exemption 6 allows the government to withhold materials responsive to a FOIA request if those materials include "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The government may invoke Exemption 7(C) to protect from disclosure "records or information compiled for law enforcement purpose . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C).  Under both Exemption 6 and Exemption 7(C), the court must engage in a balancing test to determine whether the public interest in disclosure is outweighed by a significant private interest in non-disclosure. *See Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review*, 830 F.3d 667, 673–74 (D.C. Cir. 2016); *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1174 (D.C. Cir. 2011).  When an agency invokes both Exemption 6 and Exemption 7(C) to justify redactions in law enforcement records, the court should first consider whether the government has satisfied its burden of proof with respect to Exemption 7(C) because that exemption is broader.  *See Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011).  If the court determines the agency properly withheld the materials under Exemption 7(C), then it need not consider whether Exemption 6 also justifies withholding those materials. *See, e.g.*, *Jett*, 139 F. Supp. 3d at 360.

Here, the FBI invokes both Exemption 6 and Exemption 7(C) in order to justify withholding information pertaining to "various investigative personnel and third parties mentioned in the FBI's files," as well as "the names and identifying information for FBI Special Agents and support personnel, non-FBI federal law enforcement personnel, state and local law enforcement personnel, and third parties who were merely mentioned, of investigative interest, or FBI

informants." *See* Def.'s Second Opp'n at 9, 12; Fourth Hardy Decl. ¶¶ 10–12.  The parties do not dispute whether the redacted materials are law enforcement records.  Accordingly, the court begins its analysis with whether the FBI satisfied its burden of proof for invoking Exemption 7(C).

The Hardy Declarations, in combination, provide specific information sufficient to place the withheld materials squarely within the bounds of Exemption 7(C).  *See Am. Civil Liberties Union*, 628 F.3d at 626.  The FBI cites the Fourth Hardy Declaration in support of its invocation of Exemption 7(C).  That declaration, in turn, cross-references and incorporates the First Hardy Declaration's explanation for invoking Exemption 7(C) with respect to the initial set of materials disclosed to Jett.  *See* Fourth Hardy Decl. ¶¶ 10–12 (incorporating by reference First Hardy Decl. ¶¶ 37–41).  The court has already held that those paragraphs of the First Hardy Declaration are sufficiently detailed to satisfy the FBI's burden of proving that the "strong privacy interests of those named in the FBI's files" outweigh any countervailing public interest in their disclosure.  *See Jett*, 139 F. Supp. 3d at 361.  Jett advances no evidence that the FBI engaged in illegal activity or acted in bad faith.  *See id.*[8]

Thus, the court finds the FBI appropriately invoked Exemption 7(C) to redact and withhold the names and identifying information of third parties and law enforcement personnel in the materials released to Jett on December 30, 2015.[9]

### 2.    *Exemption 7(E)*

FOIA Exemption 7(E) allows the government to shield law enforcement records or information if its release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or

---

[8] To the extent Jett may be arguing that the FBI cannot state its reasons for redaction by referencing the reasons contained in a previously submitted affidavit, the court is unpersuaded.

[9] In light of this finding, the court need not opine on whether the FBI also properly invoked Exemption 6.  *See Am. Civil Liberties Union*, 655 F.3d at 6; *Jett*, 139 F. Supp. 3d at 360.

prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5

U.S.C. § 552(7)(E). This jurisdiction's precedent "sets a relatively low bar for the agency to justify

withholding information under FOIA Exemption 7(E)." *Ortiz v. U.S. Dep't of Justice*, 67 F. Supp.

3d 109, 122 (D.D.C. 2014) (internal quotation mark omitted).

Here, the FBI claims Exemption 7(E) to justify its redactions and withholding of

"information about its transitions through various stages of investigation and which investigative

techniques were chosen for certain situations." *See* Def.'s Second Opp'n at 15. The agency fears

that disclosure of this material would "risk criminals learning to predict the timing and structure

of the FBI's investigations, . . . allowing them to better plan their illegal activities to avoid detection

or disruption." *Id.*

Once more, the FBI's affidavits provide specific information sufficient to place the

withheld materials squarely within the bounds of Exemption 7(E). *See Am. Civil Liberties Union*,

628 F.3d at 626. The Fourth Hardy Declaration states that the four-page document the FBI

withheld pursuant to Exemption 7(E) contains a questionnaire that, though perhaps publicly known

in a generic sense, becomes sensitive when filled out with content related to a specific

investigation, as is the case here. *See* Fourth Hardy Decl. ¶ 13. Additionally, the questionnaire

lists "other potential techniques, the specific purpose of the technique utilized, internal reviewing

procedures, sensitive threshold requirements, factors weighed in granting or denying the

application, and a detailed description of the specific actions to be performed with this technique."

*Id.* Hardy states that disclosure of these materials would risk providing criminals "with an inside

look at the FBI's 'playbook,'" as it could assist criminals in structuring an attack so as to avoid

triggering certain FBI responses or detection of criminal activity. *See id.* Thus, the FBI presents,

in presumed good faith, that the materials it has withheld would disclose sensitive FBI techniques

that risk circumvention of the law, and Jett advances no argument or evidence to rebut that presumption.  *See Am. Civil Liberties Union*, 628 F.3d at 626.  These declarations are sufficient to pass the low hurdle of Exemption 7(E).

The court concludes the FBI properly withheld four pages of the responsive materials released on December 30, 2015, pursuant to Exemption 7(E).

### 3. Segregability

Jett asserts that in camera review is necessary to determine whether the FBI's redactions and withholdings *actually* accounted for and separated out segregable, factual information.  *See* Pl.'s Second Mem. at 10.  However, the FBI has satisfied its obligation to show that it released all reasonably segregable, nonexempt information by outlining its review process in detail in the Fourth Hardy Declaration.  *See Sussman*, 494 F.3d at 1117.  That declaration explains that RIDS reviewed the media disc and each of the 26 responsive pages for segregability purposes and made its redactions and withholdings pursuant to Exemptions 6, 7(C), and 7(E), as just discussed.  *See* Fourth Hardy Decl. ¶¶ 14–16.  Moreover, by simply reviewing the redacted records the court can easily discern that the FBI conducted a line-by-line segregation review.  In camera review of the unredacted records is not necessary.  *See Mead Data Cent.*, 566 F.3d at 262.  In the absence of any reason to believe the FBI's representation is not made in good faith, the court is satisfied that the FBI has demonstrated it released to Jett any segregable, nonexempt portions of the records at issue.

## IV.   CONCLUSION AND ORDER

For the foregoing reasons, the court grants in part and denies in part the FBI's Renewed Motion for Summary Judgment.  The court grants the FBI's Motion insofar as it pertains to the agency's justifications for its redactions of the materials produced on December 30, 2015.  The FBI's Motion is denied, however, as to the adequacy of its search.

In addition, the court denies Jett's Renewed Motion for Summary Judgment but grants Jett's Rule 56(d) Motion for Limited Discovery.  Jett may conduct discovery for the limited purpose of determining whether the FBI has the capability of simultaneously searching for records in the CRS and ELSUR indices, such that it performed an adequate search in this case, or whether the FBI must conduct separate searches in each database to reach all responsive records.

This matter will proceed as follows.  The parties shall meet and confer and submit a Joint Status Report on or before March 24, 2017, that specifies the date on which Jett, through his counsel, will conduct a telephonic discovery deposition of the FBI's Declarant, David M. Hardy. Within five days of the deposition, the parties shall file another Joint Status Report that (1) proposes a schedule for a third round of summary judgment briefing, if necessary, and (2) includes any other information in this matter of which the court should be aware.

Dated: March 13, 2017

Amit P. Mehta
United States District Judge